**CITY OF HOMER, Appellant,**

v.

**LAND'S END MARINE, Appellee.**

**No. 1019.**

Supreme Court of Alaska.

Oct. 13, 1969.

David B. Ruskin, Anchorage, for appellant.

H. Russel Holland, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

OPINION

BONEY, Justice.

On September 23, 1963, Land's End Marine, a partnership, and the City of Homer's predecessor in interest entered into a ten-year contract[1] whereby Land's End Marine agreed to provide services as harbor master of the Homer small boat harbor. On September 9 and 23, 1963, Land's End Marine and the city's predecessor in interest entered into two sublease agreements for the rental of state-owned real estate adjacent to the Homer small boat harbor. The first sublease

---

1. The contract was originally made with the Kenai Peninsula Public Utility District before appellant became a municipal corporation.

agreement, covering one lot, was for the term of 20 years; the second agreement, covering two lots, was for 10 years. By a subsequent amendment the second sublease was incorporated into the harbor master agreement.

As harbor master, Land's End Marine was to charge the public for the moorage and launching of small boats and for labor charges for work on boats arising out of emergencies or done at the request of the boat owner. The land covered in the sublease agreements was to be used for facilities connected with the operation, maintenance, and management of the small boat harbor. On one lot, Land's End Marine operated a tackle shop and maintained approximately 20 skiffs with outboard motors for rent. The other lots were to provide room for expansion at a later time.

In September of 1963, Land's End Marine obtained permission from the city's predecessor to enter into a contract with Standard Oil Company to provide fueling facilities at the small boat harbor. Land's End Marine then began negotiations with Standard Oil, which provided estimates on the pipelines and tanks that would be required for the proposed fueling facility. Standard Oil also drew plats which were to be submitted to the city council. Although no contract had been signed between Standard Oil and Land's End Marine, they were meeting regularly in Anchorage and in Homer.

Land's End Marine had been operating the small boat harbor for approximately eight months, when on March 27, 1964, the great Alaska earthquake struck the Kachemak Bay area, resulting in damage to the Homer small boat harbor. As a result of the earthquake, over 500 feet of the harbor breakwater subsided. A clause in the harbor master agreement provided that the agreement could be terminated by either party in the event the small boat harbor became inoperable for its purposes. Following the earthquake, the appellant, City of Homer, in the belief that the small boat harbor was inoperable, notified Land's End Marine that the harbor master agreement and the second sublease, were terminated. The city also notified Land's End Marine that the first sublease agreement was terminated, claiming that the earthquake had frustrated the intent of the sublease.

Land's End Marine in the belief that the harbor was still operable after the earthquake commenced an action against the City of Homer. In the complaint Land's End Marine alleged three causes of action: the first cause of action was based on a breach of the harbor master agreement; the second was based on the wrongful withdrawal of approval of the pending contract between Standard Oil and Land's End Marine to provide fueling facilities; and the third cause of action was based on the wrongful termination of the two sublease agreements. Land's End Marine alleged damages of $54,500 on the first cause of action and $57,750 on the third cause of action. On the second cause of action, an injunction was requested enjoining the city from interfering with the fueling facilities which Land's End Marine intended to build and operate.

At trial Land's End Marine produced witnesses who testified that the Homer small boat harbor was impaired but still operable following the earthquake. It was also shown that the city cut away the floating docks and walkways which comprised the small boat harbor's mooring facilities. Avery Sewell, a partner in Land's End Marine, testified that during the eight months of operation the partnership had a net income of $500 per month from the operation of the small boat harbor. He also testified that the partnership's marina business, i. e., the tackle shop and boat rental operated on the subleased land, suffered a loss of profits in the amount of $3,000 per year due to the wrongful termination of the sublease agreements.

At the conclusion of the trial, the case was submitted to the jury with a general verdict form and three special interrogatories. The jury reached its verdict on

November 3, 1967, and the verdict was opened on Monday, November 6, 1967. The general verdict was in favor of Land's End Marine in the amount of $84,000. The jury's answers to the special interrogatories were read at that time. The general verdict form as filled in by the jury read as follows:

We, the jury, duly empaneled and sworn to try the above entitled cause, do find for the plaintiff *Land's End Marina,* [sic] and against the defendant *City of Homer, Alaska,* and we find that the plaintiff *Land's End Marina* [sic] is entitled to recover of and from defendant the sum of *$84,000.00.*

Dated at Anchorage, Alaska this 3rd day of November 1967.

The special interrogatories as filled in by the jury are as follows:

1. Was the plaintiff ready, able and willing to provide fueling facilities for the Homer Small Boat Harbor?

<u>yes</u>   <u>   </u>
YES   NO

2. Did the defendant wrongfully withdraw the approval given to the plaintiff to enter a contract with the Standard Oil Company to provide fueling facilities in the Homer Small Boat Harbor?

<u>yes</u>   <u>   </u>
YES   NO

If you find that plaintiff is entitled to a verdict against the defendant, then you will please answer the following interrogatories:

3. The plaintiff alleged it has been prevented from performance under the agreements and in the alternative seeks damages in the amount of actual damages suffered during the period that performance was prevented. In this connection you are asked to fill in the following two blanks:

a) We find the defendant on the <u>14th</u> day of <u>July</u>, 1964, prevented performance by the plaintiff under the agreements before us.

b) We find that the plaintiff has suffered actual damages in the amount of <u>$500.00</u> from the date established by us in subparagraph (a) above until the date of this interrogatory.

The jurors acknowledged that the verdict was "their verdict" and that the verdict was unanimous. The attorney for the City of Homer did not object or raise any question prior to the discharge of the jury as to any inconsistency between the answer to interrogatory 3(b) and the general verdict. Judgment on the general verdict was entered in favor of appellee in the amount of $84,000.

Several days after the verdict was read, the city moved unsuccessfully for a judgment n. o. v. or in the alternative for a new trial. One point raised in this motion was the alleged inconsistency between the jury's total award of $84,000 to plaintiff and the jury's finding that plaintiff suffered $500 damages from July 14, 1964, to the date of the verdict, November 3, 1967. The city argued that if under "all the agreements" the plaintiff suffered $500 damage in three years, eight months, then under no state of facts could the jury award $84,000 damages for ten years or even for twenty years. This alleged inconsistency is the subject of the instant appeal.

Appellee, Land's End, argues on appeal that the answer to special interrogatory 3 (b) is consistent with the general verdict, because the jury could have believed that the special interrogatory referred only to damages for the breach of the proposed fueling facility agreement, the second claim for relief. Land's End further argues that if the interrogatory and the general verdict are not found to be "harmonious", they can still be "reconciled." Land's End also claims that the city waived the right to challenge the alleged inconsistency on appeal, because the attorney for the city did not raise the question of the inconsistency prior to the discharge of the jury.

Both parties to this appeal agree with the statement of law found in Golden

North Airways v. Tanana Publishing Co., 218 F.2d 612, 618, 15 Alaska 303 (9th Cir. 1954) that where a special finding of fact is inconsistent with the general verdict, the former shall control the latter.[2] Both parties also agree that if the special verdict can be reconciled with the general verdict, the court should do so.

It appears to be Land's End's position that there are two possible kinds of harmony between answers to special interrogatories and general verdicts. First, there is the harmony that is apparent from just reading the answers to the interrogatories and the general verdict, and second, there is the harmony which can result from a court's effort to reconcile that which on the surface is inconsistent. Land's End attempts to find support for this view in the advice of the text writers, namely, that before finding an inconsistency the court should try to reconcile the verdict and interrogatories in favor of the general verdict.[3]

We agree with the notion that a court should try to support the general verdict by reconciling the interrogatories with the general verdict. However, we reject the idea that there are two kinds of harmonization or reconciliation. Either the answers to the interrogatories agree with the general verdict or they do not. We do not believe that the treatises cited say more than this. Perhaps some courts have given credence to Land's End's theory of easy and hard reconciliation. Some of these courts have gone to great lengths to find a theory, however implausible, with which to achieve reconciliation.[4] We will look for consistency, but will not create it where there is none.

Land's End suggests that consistency can be found in the present case by assuming that the jury misread interrogatory 3(b) to apply to only the fueling facility agreement as do interrogatories one and two. Interrogatory 3(b) asks for damages for breach of the "agreements" in the plural. It does not refer to any particular agreement. We agree that it is quite easy to misread the interrogatory due to its placement near the other questions which do solely concern the fueling facility agreement. Also one of the court's instructions, if misread, could give the impression that all the interrogatories referred to the fueling facility agreement.[5]

2. This rule is now found in Civ.R. 49(c) which provides in part as follows:

> When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial.

3. 2B W. Barron & A. Holtzoff, Federal Practice and Procedure § 1059 (1961); 5 J. Moore, Federal Practice ¶ 49.04 at 2211 (2d ed.1968).

4. Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed. 2d 618, 627 (1963); Arnold v. Panhandle & Santa Fe Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957); Cone v. Beneficial Standard Life Ins. Co., 388 F.2d 456 (8th Cir. 1968); Giblin v. Beeler, 396 F.2d 584, 588–589 (10th Cir. 1968).

5. Instruction No. 12 stated that there were three causes of action and went on to describe the first cause of action. Instruction No. 13 dealt with the second cause of action, the fueling agreement, and instruction No. 14 dealt with the third cause of action. The special interrogatories were mentioned only in instruction 13 which reads as follows:

> In its second cause of action the plaintiff, Land's End Marine, a partnership, alleges that the defendant, City of Homer, wrongfully withdrew its approval given to the plaintiff to enter into an agreement with Standard Oil to provide fueling facilities for the Homer small boat harbor. The plaintiff alleges that the defendant secured such a fueling concession for itself, notwithstanding the alleged fact that the plaintiff was able to provide said fueling facilities and had established the necessary relationship with Standard Oil to adequately provide fueling facilities for the Homer small boat harbor.
>
> The plaintiff has asked for an injunction to prevent the defendant from operating or from authorizing any per-

In fact counsel for the city when reading the interrogatory before its submission to the jury thought it referred only to the fueling facility agreement, and he objected to the interrogatory because no evidence had been introduced by Land's End as to what the damages were from the interference with the fueling facility agreement.[6] The trial court then stated that interrogatory 3(b) referred to all the agreements, and counsel for Land's End agreed. On the motion for new trial and this appeal, it seems that each party has reversed their legal positions. In post-judgment proceedings, the trial court stated "We do know from the interrogatory [3(b)] that the jury allowed five hundred dollars ($500.00) damages for the second cause of action. * * * " On appeal Land's End states that 3(b) refers to the fueling agreement only, and the city claims it must refer to all the agreements. To explain how the jury reasonably misread a special interrogatory is not to show consistency, but rather to confirm that a mistake has been made.

Even if we were to assume that the jury did believe that the interrogatory only referred to damages on the fueling facility agreement, that would not explain how the jury arrived at the figure of $500. There is not one word in the record concerning the damages which might have flowed from the interference by the city with Land's End's proposed contract with Standard Oil.

Some courts have held that a mathematical inconsistency such as the instant case is not true inconsistency because a jury is not bound by mathematical formulae. In United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir. 1964), the district court had found that after repeated efforts by mathematical calculations, to harmonize and reconcile the answers to the eleven special interrogatories with the general verdict, no harmony was possible. On appeal it was held that there was no true inconsistency, because

> * * * nothing in the law compelled the jury to calculate its damage awards according to a fixed mathematical formula using only the factors contained in the eleven special findings.

Id. at 407. However, in United Air Lines, Inc. v. Wiener, there were elements of damage in the record which were not covered in the interrogatories. In the context of that case, we agree there is no need for findings in special interrogatories to neatly add up to the total listed in the general verdict. However, in the present case the evidence as to damages was quite simple. According to Avery Sewell, a partner in Land's End, one cause of action was worth $500 per month for 10 years and the other was estimated at $3,000 per year for 20 years. This testimony was not disputed and was the plaintiff's only evidence as to damages. Under these circumstances there was no way for the jury to find that for the first three years the damages were $500 and then that inexplicably the rate of damages increased to total $84,000 by the end of the ten and twenty-year periods.

There may be an adequate theory which reconciles the jury's answer to interrogatory 3(b) with the general verdict in the present case; however, such a theory has not been suggested to us. Due to the circumstances of the present case, we will

---

son, firm or corporation, other than plaintiff, to operate the fueling facilities at the Homer small boat harbor.

In this connection there is submitted to you an interrogatory. This interrogatory directed to you as the jury, asks you to decide whether the plaintiff did have the necessary relationship with the Standard Oil Company prior to the natural disaster of March 27, 1964 whereby it could provide the fuel service facilities at the Homer small boat harbor.

Whether the defendant should be permanently enjoined from operating or authorizing another person to operate the fueling facilities at the Homer small boat harbor is a matter for the court to determine.

6. Land's End in its complaint had not requested damages for interference with the fueling facility agreement but had asked for injunctive relief.

**480**

not look further for a view of the case which harmonizes the claimed inconsistency. We hold that the city waived the right to challenge the consistency of the answers and the verdict when its counsel failed to raise the question prior to the discharge of the jury. The trial judge clearly gave counsel an opportunity to object, and counsel for the city expressed his satisfaction with the verdict.*

The doctrine of waiver which we adopt today has been applied in Kirkendoll v. Neustrom, 379 F.2d 694, 699 (10th Cir. 1967); the court held that

> [t]he record reflects that after the special answers and verdict were read, the Court asked if there was any reason why the jury should not be discharged. Both appellant and appellee answered in the negative. The jury was discharged. Under this rule, [49(b) F.R.Civ.P.], as well as by acquiescence of counsel in the action of the court, no reversible error occurred.

Similar reasoning was employed in Walker v. Sinclair Refining Co., 320 F.2d 302, 305 (3d Cir. 1963) and in Employers Cas. Co. v. Dupaquier, 338 F.2d 336, 337 (5th Cir. 1964). Some courts are of the view that waiver should apply in such cases unless there is fundamental error.[7] In the case of Cundiff v. Washburn, 393 F.2d 505 (7th Cir. 1968), the court held that the appellant waived any objection to the alleged inconsistency between the findings and the verdict because he failed to move for the resubmission of the verdict and finding to the jury. The court reasoned that

> [a]ny other decision would hamper the just and efficient operation of the federal courts. It would encourage jury-shopping by litigants, permitting them to decide whether to take their chances on resubmitting the verdict and findings to the jury sitting or remaining silent thereby allowing the entry of judgment and moving for a new trial before a new jury.

*Id.* at 507. The city has attempted to point out certain distinguishing points in some of the above cases; however, we are persuaded that the policy behind the waiver rule, as expressed in Cundiff v. Washburn, dictates the application of the rule to the facts of the present case.

> [T]he rule that objection on the grounds of inconsistency is waived by failure to move for resubmission promotes the fair and expeditious correction of error. It requires that the error be corrected in the proceeding in which it is made, by the jury which made it, unless the trial court determines in the exercise of its discretion under Rule 49(b) to enter judgment on the special findings or to order a new trial.

*Id.* at 507. Accordingly we find no error in the proceedings below.

The judgment is affirmed.

---

* Counsel on appeal was not counsel at trial.

7. Bruflat v. City of Fort Worth, 411 S. W.2d 387, 389 (Tex.Civ.App.1967). *But* *see* City Transp. Co. of Dallas v. Vatsures, 278 S.W.2d 373, 377 (Tex.Civ. App.1955) *and* Brooks v. Moreland, 404 S.W.2d 949 (Tex.Civ.App.1966).