Lincoln **ROBERTS,** Appellant,

v.

**STATE of Alaska,** Appellee.

No. 7350.

Court of Appeals of Alaska.

April 13, 1984.

---

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Kristen M. Young, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Following a jury trial, Lincoln Roberts was convicted of one count of robbery in the second degree, AS 11.41.510, and one count of criminal trespass in the first degree, AS 11.46.320. Superior Court Judge James R. Blair sentenced Roberts to a ten-year term of imprisonment for robbery and to a concurrent one-year term for trespass. Roberts appeals, contending that the two convictions were based on inconsistent jury verdicts and that his sentence is excessive. We affirm.

On June 15, 1982, Roberts kicked in the door of the apartment of an acquaintance, John Alexander. Roberts demanded "drink or money" from Alexander. When Alexander said he had neither, Roberts struck him, breaking two ribs. Roberts then took a wrist watch and a small amount of cash and left Alexander's apartment. Roberts was apprehended shortly afterwards; the watch was still in his possession. Roberts was brought to trial for robbery in the second degree and burglary in the first degree. Roberts was convicted of robbery. He was acquitted of burglary but convicted of the lesser-included offense of first-degree criminal trespass. On appeal, Roberts contends that it was inconsistent for the jury to conclude that he was guilty of robbery and not guilty of burglary.

## INCONSISTENT VERDICTS

Roberts's claim of inconsistent jury verdicts is based on *DeSacia v. State*, 469 P.2d 369 (Alaska 1970). *DeSacia* held that a verdict of conviction on one charge will be vitiated by a verdict of acquittal on another if the two verdicts are irreconcilably in conflict.[1]  *Id.* at 373, 378. We find the question of inconsistency in this case to be a close one. However, it is a question that

1. Since *DeSacia*, several appeals have raised the issue of inconsistent jury verdicts. However, no other Alaska case has held verdicts to be irreconcilably in conflict. *See, e.g., Davenport v.*

*State*, 543 P.2d 1204, 1207–08 (Alaska 1975); *Daygee v. State*, 514 P.2d 1159, 1167–68 (Alaska 1973); *Born v. State*, 633 P.2d 1021, 1023–25 (Alaska App.1981).

we need not decide, since Roberts has not properly preserved it for appeal. We believe that the circumstances in this case are significantly different than the circumstances that led the supreme court to find plain error in *DeSacia*.

DeSacia was charged with two counts of manslaughter as a consequence of his involvement in a traffic accident that resulted in the death of two people. The accident occurred when DeSacia attempted to pass another car and forced it off the road. Both occupants of the other car were killed. DeSacia's jury found him guilty of manslaughter as to one victim but not guilty as to the other. DeSacia moved for a judgment notwithstanding the verdict based on the inconsistent verdicts. When his motion was denied, he appealed. *DeSacia*, 469 P.2d at 372. The supreme court reversed DeSacia's conviction. The court held that the two manslaughter verdicts were obviously and irreconcilably in conflict. *Id.* at 373–74. The court also noted a substantial likelihood that DeSacia's verdicts reflected an effort by the jury to compromise. *Id.* at 377–78. Given the obvious conflict in the verdicts, the court found plain error, even though DeSacia had not objected to the jury instructions and had not raised the issue of inconsistency prior to discharge of the jury. *Id.* at 372–73.

By contrast, in this case any inconsistency between the verdicts is far from obvious. Roberts claims that, in order to convict him of robbery in the second degree,[2]

the jury should necessarily have found him guilty of burglary in the first degree[3] as well. Roberts's assertion that his robbery and burglary charges were necessarily interconnected is dependent on the evidence presented at trial and requires careful analysis to be understood. Roberts's burglary charge accused him of entering or remaining in Alexander's residence with the intent to commit theft or assault. The sole evidence at trial indicated that Roberts used actual, and not threatened, force in the robbery. Furthermore, the evidence indicated that the robbery occurred in Alexander's apartment and that property was stolen. Thus, Roberts posits that in order to convict him of robbery the jury must at the very least have found that he "remained" in Alexander's apartment with the intent to assault Alexander and steal his property. Since the jury was instructed that second-degree burglary could be established by proof that he entered or remained in Alexander's apartment with intent to commit theft or assault, Roberts insists that the acquittal of burglary is inconsistent with the conviction of robbery.

Even if Roberts's theory is technically valid, it assumes that the jury fully understood that findings of both assault and theft were necessary to convict Roberts of robbery when it decided to acquit him of burglary. As a practical matter, it is far from clear that the jury actually understood that assault and theft were necessary components of robbery.[4] Moreover, Rob-

---

2. AS 11.41.510 provides, in relevant part:

*Robbery in the second degree.* (a) A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with intent to

(1) prevent or overcome resistance to his taking the property or his retention of the property after taking.

3. AS 11.46.300 provides, in relevant part:

*Burglary in the first degree.*

(A) A person commits the crime of burglary in the first degree if he violates § 310 of this chapter and (1) the building is a dwelling ....

AS 11.46.310 provides, in relevant part:

*Burglary in the second degree.*

(A) A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime in the building.

4. As previously indicated, Roberts's jury was instructed that the burglary charge required proof that Roberts entered or remained in Alexander's home with the intent to commit assault or theft. However, the jury was not expressly told that the robbery charge required proof of either assault or theft. Rather, the court's instructions informed the jury that robbery required proof of force or the threat of force, coupled with proof of a taking of property from the immediate presence or control of a person. The court's instructions did not state that "theft"

erts's theory of inconsistency presupposes that the jury actually found that his act of robbery in Alexander's apartment constituted "remaining" for the purpose of the burglary statute. Yet it is questionable whether the jury in fact needed to reach this conclusion.[5]

It is not obvious that the jury actually recognized the technical and somewhat complicated statutory analysis argued by Roberts on appeal, and it is not apparent that the jury should reasonably have been expected to do so. Thus, the potential inconsistency between verdicts in this case is far from the obvious and unmistakable inconsistency in *DeSacia*.

The distinction between this case and *DeSacia* is further highlighted by the final argument of trial counsel.[6] In *DeSacia*, the jury was instructed that the two charges against the defendant were to be considered separately. The supreme court found plain error despite DeSacia's failure to object to this instruction. *DeSacia*, 469 P.2d at 373 and n. 7. A similar instruction was given, without objection, in this case.[7]

Here, however, Roberts's trial counsel relied on this instruction by affirmatively urging the jury to consider each count of the indictment independently. Roberts's trial counsel stated, in relevant part:

> You should note that the instructions dictate that you decide each count separately. In other words, *you can't assume the guilt of Mr. Roberts with regard to one count merely because you tend to feel that he's guilty of another count.* Now, I am not conceding that this is the way things are going to come out, but I'd ask you to bear that in mind. You have an obligation to view each of the counts, namely robbery in the second degree and burglary in the first degree, separately, *and you have an obligation as jurors to* go through each and every one of the elements in each of these crimes and *ascertain separately, on a separate basis, whether each of these crimes were in fact proven* to have been committed ... beyond a reasonable doubt. [Emphasis added.][8]

---

involved a "taking", as that word was used in the robbery statute. Rather, the jury was told that theft required proof that Roberts "obtained" the property of another with the intent to deprive the person of his property. Unlike *DeSacia,* the court's instructions in this case did not employ identical terminology in defining the crimes of robbery and burglary, even though, under the facts of the case, the components of both crimes were the same.

5. Under the evidence at trial, the jury could well have concluded that Roberts did not form an intent to commit theft or assault until Alexander had refused Roberts's demand for money. In committing the robbery, Roberts "remained" in Alexander's apartment only long enough to commit the offense. Roberts did not stay in the apartment for any appreciable period of time before or after the robbery, and there was no evidence that Alexander expressly ordered Roberts to leave at any given time. Assuming, as indicated by the conviction for criminal trespass, that the jury found that Roberts entered Alexander's home unlawfully but did not specifically intend to commit robbery at the time of entry, it might well have concluded that Roberts's brief presence in the apartment after he formed the intent to rob Alexander did not amount to "remaining." Whether such an interpretation of "remaining" would be technically accurate is beside the point. It is not at all inconceivable that the jury might have con-

strued the word "remain" to require lingering or staying in Alexander's home beyond the brief time actually necessary to commit the robbery. Nothing in the statutory definition of "enter or remain unlawfully," as given to the jury, would have expressly precluded such an interpretation. *See* AS 11.46.350(a)(1).

6. Counsel on appeal did not represent Roberts at trial.

7. Jury instruction number 23 stated:

> The defendant is charged with a separate crime in each count of the Information. Each crime and the evidence pertaining to it should be considered separately by the jury and a separate verdict should be returned as to each count. Defendant's guilt or innocence of the crime charged in one count should not affect the jury's verdict on any other count. If the jury finds that the defendant is guilty beyond a reasonable doubt of any one of the crimes charged in the Information, a verdict of guilty as to that count should be returned.

8. Later in his final argument, trial counsel repeatedly argued that if the jury was in doubt about Roberts's guilt on either of the two offenses charged, it was required to give careful consideration to the lesser-included offenses for that charge. At no time did Roberts's trial counsel intimate that there might be any incon-

Thus, Roberts's trial counsel adopted a view diametrically opposed to that espoused by Roberts on appeal: he expressly maintained that guilt on one charge was not determinative of guilt on the other. Having urged the jury at trial to consider the charges independently, Roberts is in a poor position to complain of any inconsistency now.

This brings us to a third distinction between the present case and *DeSacia*. In *DeSacia*, although trial counsel did not object to the failure of the jury instructions to preclude inconsistent verdicts, trial counsel did make a timely motion for judgment notwithstanding the verdict after the jury returned inconsistent verdicts. *DeSacia*, 469 P.2d at 372. By contrast, in this case the issue of inconsistency was never presented to the trial court, either before or after the verdict; it has been raised for the first time on appeal.

In civil cases the Alaska Supreme Court has repeatedly held that an objection to any potential inconsistency between verdicts must be made before the jury is discharged if the issue of inconsistency is to be preserved for appeal. *Ostrem v. Alyeska Pipeline Service Co.*, 648 P.2d 986, 991 (Alaska 1982); *City of Fairbanks v. Smith*, 525 P.2d 1095, 1097–98 (Alaska 1974); *Nordin Construction Co. v. City of Nome*, 489 P.2d 455, 472 (Alaska 1971). *See also City of Homer v. Land's End*

*Marine*, 459 P.2d 475, 479–80 (Alaska 1969).[9]

■ We believe that the same requirement should normally apply in criminal cases to preserve for appeal a claim of inconsistent jury verdicts. Absent plain error, a timely objection is required for other types of error that occur during the course of a trial.[10] We see no reason why the same rule should not apply to inconsistent jury verdicts.[11] We note that other jurisdictions have not hesitated to require timely objections to inconsistent or otherwise defective jury verdicts in criminal cases.[12] We therefore hold that claims of inconsistent jury verdicts in criminal cases will not be considered on appeal unless an objection to the verdicts is first made in the trial court, before the jury is discharged. Departure from this rule may be necessary in certain cases to correct plain error. Alaska R.Crim.P. 47(b). *DeSacia* is an example of such a case. However, unless inconsistency between two verdicts is obvious and appellate review is necessary to prevent manifest injustice, a timely objection will be required.

■ As we have noted, the inconsistency between Roberts's two verdicts is not obvious. To the extent that the verdicts were inconsistent, the inconsistency was invited by trial counsel's final argument. No objection to the verdict was raised below, and we do not find plain error. We thus con-

sistency, either legally or practically, in convicting on one of the two felonies charged while convicting of only a lesser-included offense on the other charge.

9. *Land's End Marine* was decided prior to *DeSacia* but did not involve a claim of inconsistency between two verdicts; rather, the inconsistency alleged in that case was between a special interrogatory and a general verdict. The supreme court first extended the *Land's End Marine* rule to inconsistent jury verdicts in *Nordin Construction Co. v. City of Nome*, 489 P.2d at 472. *Nordin* was decided after *DeSacia*.

10. *See, e.g.,* A.R.E. 103(a); Alaska R.Crim.P. 47(b).

11. Indeed, the requirement of a timely objection seems less onerous in the context of inconsist-

ent verdicts than with most claims of error arising during a trial. Unlike evidentiary rulings, which require an immediate objection in mid-trial, counsel will normally have ample opportunity to anticipate and call to the court's attention—either in proposing jury instructions or after final arguments, while the jury is deliberating—any possibility of inconsistent jury verdicts.

12. *See, e.g., State v. Peaslee*, 59 Or.App. 519, 651 P.2d 182, 183 (1982); *Moore v. State*, 178 Ind. App. 95, 381 N.E.2d 523, 526 (1978); *Johnson v. State*, 176 Ind.App. 567, 376 N.E.2d 542, 544 (1978); *People v. Jackson*, 69 A.D.2d 823, 415 N.Y.S.2d 45, 46 (1979); *People v. Parks*, 59 A.D.2d 543, 397 N.Y.S.2d 128, 130 (1977); *Edwards v. State*, 7 Md.App. 108, 253 A.2d 764, 768 (1969); *Hayes v. State*, 44 Ala.App. 499, 214 So.2d 708, 711 (1968).

clude that Roberts forfeited his claim of inconsistency.

## SENTENCE

Roberts separately argues that his total sentence of ten years—one year for criminal trespass and ten years, concurrent, for second-degree robbery—is excessive. This argument does not require extensive discussion. At the time of his offense, Roberts had already been convicted of four felonies: two for assault with a dangerous weapon, one for mayhem, and one for larceny in a building. He also had an extensive record of misdemeanor convictions, many of which involved assaultive conduct. Roberts's victim was a sixty-three year old man who sustained two broken ribs as a result of the robbery. At the time the robbery was committed, Roberts was out on bail pending trial for a charge of attempted sexual assault.

In imposing the maximum term for robbery, Judge Blair expressly found three statutory aggravating factors: that Roberts's victim suffered physical injury, AS 12.55.155(c)(1); that Roberts had a criminal history of assaultive behavior, AS 12.-55.155(c)(8); and that Roberts was on release for another felony at the time of the offense, AS 12.55.155(c)(12). Roberts maintains that Judge Blair incorrectly considered two of these aggravating factors. We conclude, however, that all three factors were properly relied upon by the judge.[13]

Considering the circumstances of the present case—including the violence involved in the offense, the injuries inflicted on Roberts's victim, Roberts's prior criminal record, and the fact that this offense was committed while Roberts was on release pending trial for another serious felony—we conclude that Judge Blair was not clearly mistaken in adjusting the presumptive six-year term for second-degree robbery to the maximum term of ten years. We similarly find that Judge Blair was not clearly mistaken in imposing a concurrent maximum one-year term for first-degree criminal trespass.[14]

The conviction and sentence are AFFIRMED.

---

**13.** Roberts concedes that he had a history of convictions for assaultive behavior, AS 12.55.-155(c)(8). Since this was the only aggravating factor that Roberts contested below, he can be deemed to have waived any challenge to the other two factors on appeal. In any event, we find that Roberts' claims with respect to the other factors are without merit.

Roberts first argues that Judge Blair should not have considered physical injury to the victim as an aggravating factor because injury was an essential element of his second-degree robbery conviction. *See* AS 12.55.155(e). This is incorrect. Second-degree robbery only requires proof of theft from a person by use of force or the threat of force. AS 11.41.510. Even assuming, as Roberts argues, that actual force was a necessary element of the robbery under the specific circumstances of this case, physical injury was not. *See Woods v. State*, 667 P.2d 184, 187 (Alaska 1983) (physical injury is not a necessary element of first-degree sexual assault).

Roberts also claims that Judge Blair should not have considered as an aggravating factor Roberts's release on a pending charge of attempted sexual assault. Roberts argues that the pending charge did not qualify as an aggravating factor because assault was not a necessary

element of that offense. AS 12.55.155(c)(12) specifies an aggravating factor for cases in which the defendant, at the time of the offense, was "on release ... for another felony charge or conviction or for a misdemeanor charge or conviction having assault as a necessary element." We think it apparent that the phrase "having assault as an element" was intended to modify only "a misdemeanor charge or conviction." Had the legislature meant to require the element of assault for both felonies and misdemeanors, repetition of the phrase "charge or conviction" after "felony" and "misdemeanor" would have been unnecessary.

**14.** Roberts argues that Judge Blair failed to give an adequate explanation of his reasons for adjusting the six-year presumptive term for robbery to ten years. *See Juneby v. State*, 641 P.2d 823, 845–46 (Alaska App.1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983). Judge Blair's explanation was in fact cursory. However, given Judge Blair's appropriate reliance on the three separate aggravating factors involved in this case, we conclude that justification for the four-year increase over the presumptive term is apparent from the record. *See Neal v. State*, 628 P.2d 19, 21 (Alaska 1981).