NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT T. BAUM, | ) | |
| | ) | Supreme Court No. S-17755 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-17-01699 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HOME DEPOT U.S.A, INC., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1836 – July 21, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Raymond Funk, Judge pro tem.

Appearances: Benjamin I. Whipple, Palmer, for Appellant and Robert T. Baum, pro se, Palmer, Appellant. Kelsey L. Shewbert, Holt Woods & Scisciani LLP, Seattle, Washington, and Daniel T. Quinn, Richmond & Quinn, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.  INTRODUCTION

After a man tripped on pallets and fell in a store, tearing his rotator cuff, he sued the store. A jury found the store negligent but concluded that its negligence was not a substantial cause of the man's injury. The man moved for a new trial, alleging that the verdicts were inconsistent. The superior court denied the motion and a subsequent

---

\*      Entered under Alaska Appellate Rule 214.

motion for reconsideration. The man appeals; we affirm the superior court's denial of the motion for a new trial.

## II. FACTS AND PROCEEDINGS

### A. Background

Robert Baum went to a Home Depot in October 2016 for plumbing supplies. As he left the plumbing aisle, Baum heard a loud noise from a key grinding machine and turned his head to look toward the noise. He then "proceeded around the corner."

Although there is a dispute regarding where Baum was looking when he proceeded around the corner, he did not see pallets located in the center of the aisle he turned down. Baum walked into the pallets, tripped, and fell. Baum initially thought he had broken his knee. He later noticed pain in his left arm and shoulder and was seen by doctors who eventually diagnosed a "full-thickness tear" of the rotator cuff in his left shoulder.

Because physical therapy did not relieve his pain or help his shoulder, Baum had surgery. Although the surgery "alleviated [his] pain" and "was a success," Baum's physical capacity to work as a plumber decreased by 30%.

### B. Proceedings

#### 1. The trial

In May 2017 Baum sued Home Depot for negligence, seeking damages for "pain and suffering, disability, mental anguish and loss of earnings and . . . substantial medical expenses." Baum alleged three theories of negligence at trial: (1) the pallets were "set back" in the middle of the aisle "instead of flush with the aisle" where they could be seen by a person walking in the aisle; (2) the product on the pallets was not placed at the edge of the pallets, and the pallets therefore were "out of sight to someone

coming down [the] aisle"; and (3) the "exposed part of the pallet[s]" was less than two feet high and therefore "out of the range of vision."

An eight-day trial was held in October 2019. Baum testified and presented testimony from a Home Depot employee as well as an "expert in the area of safety and retail store operations." The expert, Alex Balian, testified about possible hazards from placement of pallets. He explained that empty pallets can create a safety problem because a "customer's line of sight is not at the floor" and anything that is not at thigh level or higher "becomes a potential hazard because [a customer is] not going to see it." He testified further that a pallet with merchandise on it can also be hazardous unless that merchandise is placed flush with the edge of the pallet. Otherwise, Balian explained, the "edge of the pallet" will not be "define[d]" and "within the field of [the customer's] vision," creating "a tripping hazard."

On cross-examination Balian acknowledged he had not visited the Home Depot or taken measurements of the aisle or pallets. He also conceded that he had not conducted any experiments or investigations to determine what Baum saw or had been able to see.

Baum's attorney also called the hardware supervisor who had been operating the key machine at the time of Baum's fall. He testified that he saw Baum "moving very fast" and "looking right" while "heading left" as he exited aisle nine, the plumbing aisle. The supervisor testified that the pallets Baum walked into were located in the middle of the aisle, shrink wrapped in yellow film, and had clearance on either side so customers could walk around them. Contrary to Baum's description of five empty pallets stacked on top of each other with a boiler on top of them, the supervisor stated there were two pallets, double stacked, about three feet high.

The supervisor acknowledged that, other than yellow shrink wrapping, there were no warnings or hazard signs around the pallets. And he admitted that he did

not take any photos of the pallets to document their placement or what they looked like when Baum walked into them. The supervisor testified that pallets were not usually placed in that location during the day time and that a customer "wouldn't be able to see" the pallets if "walking right next to the shelving itself."

Home Depot, in turn, called two other employees, an assistant manager and the acting store manager at the time of Baum's fall. The assistant manager testified that the pallets' location was not unusual but could not recall if he inspected the site after Baum's fall. On cross-examination, he admitted he had previously agreed that a customer would not "see" a "pallet in the middle" of an aisle's end cap if it was "up against the product" until the customer "cleared the corner." He also admitted that he did not "go back on [the day of Baum's fall] and test out vision" regarding the visibility of the pallets. The acting manager at the time of Baum's fall testified that she inspected the pallets after Baum's fall, offered him first aid, and filled out the incident report that Home Depot required.

Home Depot also called an orthopedic surgeon, Donald Schroeder, to testify about Baum's injuries. Dr. Schroeder attributed Baum's "[f]ull thickness . . . rotator cuff [tear]" to "the injury at Home Depot," and identified Baum's fall as "the major contributing cause to [his] surgery."

In closing Baum argued that the evidence showed "that this pallet was the cause, substantive factor, in causing [the] trip and fall." He described the store's layout, the placement of the pallets, and Home Depot's post-accident investigation. He asserted that the pallets were a "hidden hazard" and noted that Home Depot had taken no video or photographs of the pallets, even after Baum fell.

Home Depot, in its closing, acknowledged that Baum's rotator cuff tear was "connected" to his fall, but denied that any "negligence or carelessness on the part of Home Depot" had caused the fall. Instead, Home Depot argued that Baum was

"hurrying down [the] aisle" and "not watching where he's going," and that "this accident is his fault."

The superior court instructed the jury about the elements of Baum's claims and explained how to follow the special verdict that Baum had submitted. The verdict form required the jury to answer a number of questions. The first question was whether Home Depot was negligent. The second asked the jury, if it found that Home Depot was negligent, to determine whether that negligence was "a substantial factor in causing harm to the plaintiff."[1]

The jury found that Home Depot was negligent, but that Home Depot's negligence was not a substantial factor in causing harm to Baum. Baum's counsel objected to the verdict before the judge released the jury, arguing that it was an "inconsistent result" based on the "admission by Dr. Schroeder . . . that the surgery, that the rotator cuff injury was related to the fall."

The superior court invited Home Depot's response on the record. Home Depot argued there was no inconsistency because the jury could have found that "there could be some item of negligence on the part of Home Depot that did not cause [Baum's] accident." Counsel urged the court not to "follow up with the jury, they've reached their verdict and announced it so I would leave it at that."

The court ruled, noting that it "underst[oo]d the issue . . . [and] based on this argument . . . d[id] not find [that] it's inconsistent." The court did, however, invite "further briefing if the parties file something to reconsider." The court then dismissed the jury.

---

[1] The verdict form instructed the jury to stop answering questions after it answered "no" to a question.

## 2.    Motion for new trial

About a week after final judgment issued, Baum filed a motion for a new trial, arguing that the "verdict regarding causation" lacked evidentiary support because "supporting evidence is either completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust." Based on what he termed the "defendant's admission on causation" and Dr. Schroeder's testimony "attribut[ing the rotator cuff] tear to the injury at Home Depot," Baum argued that Home Depot's negligence had to be the substantial cause of Baum's injury and damages. He asserted that because "[n]o other primary mechanism of injury to [Baum's] left shoulder was introduced, speculated upon, or mentioned during trial[,] [t]he verdict . . . denies a causal link to the injury against the weight of evidence," and a new trial was required.

Home Depot opposed, noting that the special verdict included questions that "in combination, acknowledge that defendant Home Depot could have been negligent, but that such negligence did not cause the plaintiff's injury or harm." It also pointed out that Baum's counsel had submitted the special verdict form and his current "position is inconsistent with the very verdict form he approved and endorsed." Home Depot also claimed that Baum waived his challenge to an inconsistent verdict because "he did not seek to re-submit the issues to the jury for further deliberation."

Home Depot challenged Baum's claim because it "centers entirely on *medical* causation." (Emphasis in original.) Although Home Depot did not dispute that Baum had been injured, it stressed that the question was not whether he had been injured as a result of his fall; the question was "whether Home Depot's negligence was a substantial factor in causing this accident."

Home Depot pointed to testimony that Baum had presented "about negligence of Home Depot on matters which likely did not cause the accident." As examples, it listed his "criticism . . . of Home Depot's failure to take a photograph of the

pallet [or] preserve it," and his questioning of its employees about whether "the pallet should have been stacked differently." Home Depot concluded that "there may have been many instances of negligence . . . which were in fact discussed and elicited by [Baum], which were not a 'substantial factor' in causing [Baum's] injury." Because "a plainly plausible explanation for the jury's verdict" was supported by evidence of "some negligence of Home Depot, possibly including its failure to fully investigate the accident after it occurred," Home Depot argued that the verdict was not plainly unreasonable and unjust.

The superior court denied Baum's motion and offered two possible reasons for the jury's holding. First, the jury could have found that "Baum's negligence in apparently not looking where he was going" was "so overwhelming that any negligence of Home Depot [was] de minimus [sic]." Second, the court noted that "trial evidence about Home Depot's post accident investigation and preservation of evidence could lead a reasonable jury to conclude that Home Depot was in some way negligent but not a substantial factor in Baum's injuries." The court concluded it was "neither unreasonable nor inconsistent based on the evidence before the jury in this case[] to have found Home Depot's negligence was not a 'legal cause' of Baum's injuries." The court did not address Home Depot's waiver argument.

Baum moved for reconsideration, alleging that the court had overlooked the "admissions of Dr. Schroeder . . . on the critical issue of causation." Baum also argued that the court's "two theories" about why the jury could have reached its verdict violated "the adherence presumption"[2] that jurors are presumed to follow the directions they were given.

---

   [2]    *See Coffin v. State*, 425 P.3d 172, 175 (Alaska App. 2018) ("As a general matter, jurors are presumed to follow the instructions that they are given.").

Baum first argued that if the jury found him "100% at fault" it must have "combined and essentially conflated . . . two distinct questions" on the special verdict form by addressing his negligence "under a question that asked [it] to address the causation of [Home Depot's] negligence." Baum then argued that Instruction No. 23 framed negligence "from a pre-injury perspective:  'Negligence is the failure to use reasonable care to <u>prevent</u> harm to oneself or to others[,]' " (emphasis in original) and it would be improper for the jury to base its verdict on any post-accident negligence. As a result he argued that the court was required to "presume the jury['s] . . . negligence verdict had [nothing] to do with [Home Depot's] post-injury conduct."

The superior court denied Baum's motion for reconsideration.  Baum appeals.

III.  **STANDARD OF REVIEW**

"The decision to grant or deny a new trial is within the [superior] court's discretion"[3] and "[w]e will 'disturb the [superior] court's exercise of discretion only in the most exceptional circumstances to prevent a miscarriage of justice.' "[4]  "We will 'affirm a [superior] court's decision to deny a new trial if there is an evidentiary basis for the jury's decision,' "[5] and we will reverse only if "the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly

---

        [3]      *Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1142 (Alaska 2014); *see also* Alaska R. Civ. P. 59(a) ("A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.").

        [4]      *Conley*, 323 P.3d at 1142 (quoting *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005)).

        [5]      *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001) (quoting *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999)).

unreasonable and unjust."[6] In reaching our decision, we "view the evidence in the light most favorable to the non-moving party."[7]

## IV. DISCUSSION

### A. Baum Did Not Waive His Challenge To The Consistency Of The Jury's Verdict.

Baum initially disputes Home Depot's argument that he waived his ability to challenge the verdict as inconsistent. Both parties make much of required "tests" that they perceive in our case law. Baum claims that by specifically raising the issue before the jury was discharged, he raised a valid challenge to the consistency of the verdict. Home Depot concedes that Baum objected to the consistency of the verdict, but argues that he failed to satisfy an additional requirement — he did not "move for resubmission prior to the jury's discharge" as required by *Nelson v. Progressive Corp.*[8] — and that his challenge is therefore waived. We agree with Baum that he did not waive his right to challenge the consistency of the verdict.

Since 1969 Alaska has required that a jury's "error be corrected in the proceeding in which it is made, by the jury which made it."[9] A "litigant waives [the] right to challenge the consistency of a jury's verdict if [the litigant] fails to raise the issue and move for resubmission prior to the jury's discharge."[10] A challenge is timely if the

---

[6]     *Hunter v. Philip Morris USA Inc.*, 364 P.3d 439, 447 (Alaska 2015).

[7]     *Hayes v. Xerox Corp.*, 718 P.2d 929, 933 (Alaska 1986).

[8]     976 P.2d 859, 863 (Alaska 1999).

[9]     *City of Homer v. Land End's Marine*, 459 P.2d 475, 480 (Alaska 1969).

[10]    *Nelson*, 976 P.2d at 863.

litigant "raise[d] the issue of consistency *after* the verdict was rendered, provide[d] a clear statement of grounds for objection, and insist[ed] on a ruling."[11]

The record clearly reflects that Baum objected to the consistency of the verdict before the court released the jury. After Baum's objection, the court heard arguments from Baum and Home Depot regarding the verdict's consistency and found that the verdict was not "inconsistent." Having received a ruling from the court denying his motion, there was no reason for Baum to have asked the court to order further deliberation. The purpose of the waiver rule is to ensure that the same jury is able to address any challenge that is resubmitted to it.[12] Because Baum challenged the verdict as inconsistent before the court discharged the jury, he did not waive his ability to challenge it on appeal.

**B.     The Superior Court Did Not Err By Denying Baum's Motion For A New Trial.**

Baum argues that the superior court erred in a variety of ways when it denied his motion for a new trial. He claims that the verdict overlooked Home Depot's "causation concession"; that if the jury had considered Baum's comparative negligence, it had done so improperly; that the jury's negligence determination could not be based on post-accident conduct; and that the jury was confused regarding causation. We reject each of Baum's arguments.

---

[11]     *Small v. Sayre*, 384 P.3d 785, 789 (Alaska 2016) (emphasis in original).

[12]     *Id.* at 788 ("The rule . . . promote[s] the efficient operation of the courts and . . . prevent[s] jury-shopping by litigants, who would otherwise be able to choose between moving for resubmission to the same jury or, by remaining silent, seeking a new trial before a new jury.").

## 1. Home Depot did not concede that its negligence caused Baum's injury.

Baum argues that the jury's verdict that Home Depot's negligence did not cause his injury overlooks Home Depot's "causation concession" that Baum's fall caused the rotator cuff injury. Baum cites Dr. Schroeder's testimony that Baum's fall resulted in the tear to his rotator cuff and Home Depot's statement during closing arguments that Baum's rotator cuff tear was "connected" to his fall at Home Depot.

Home Depot disagrees. It argues that Dr. Schroeder described the medical, rather than the legal, cause of Baum's injury and denies that it made any concession about legal causation during closing arguments.

Dr. Schroeder's testimony about the medical cause of Baum's injury did not require the jury to conclude that Home Depot's negligence was the legal cause of the injury. A doctor's opinion about the medical cause of a plaintiff's specific injury is not an opinion about whether the conditions surrounding the incident that led to the injury were proximately caused by a defendant's negligence.[13] Knowing that Baum's fall caused his rotator cuff injury, as Dr. Schroeder testified, the jury had to determine whether Home Depot's negligence was a substantial factor in causing Baum to fall. Dr. Schroeder's testimony that he had "to attribute the tear to the injury at Home Depot" did not address the "threshold question" of whether Home Depot's negligence caused Baum to fall.[14] Instead, it merely established the medical cause of the injury.

---

[13] *See Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1141 (Alaska 2014) (noting that whether accident caused orthopedic injuries "was not the threshold question for the jury; the threshold question was whether . . . negligence — not the accident generally — caused the injuries").

[14] *See id.* at 1134, 1141 (affirming denial of motion for a new trial even though doctor "concluded [appellant] . . . had a trauma-induced [injury] caused by the
(continued...)

Baum's claim that Home Depot admitted during closing argument that its negligence caused his injury is also misguided. Home Depot acknowledged that "[its] own Dr. Schroeder agree[d]" that Baum's injury was "probably related" to the fall and that "it's connected." But its acknowledgment of the medical cause of Baum's injury, based upon its expert's diagnosis, is not the same as an admission that its negligence caused the fall that caused the injury. In fact, Home Depot argued in closing that "this accident is [Baum's] fault" and "is just not an incident that is attributable in any significant way to Home Depot."

A statement made during closing argument can be considered a judicial admission only if it is an expression "of fact" rather than "a conclusion of law or an expression of opinion . . . [and is] clear, deliberate, [and] unequivocal."[15] The only "clear, deliberate, [and] unequivocal statement"[16] regarding causation that Home Depot made in closing was its explicit claim that the "accident is [Baum's] fault" and that it was not attributable to Home Depot.

Home Depot did not concede that it was responsible in any way for Baum's injury. The jury therefore could not have overlooked its "causation concession."

> **2. It would not have been improper for the jury to consider whether Baum's negligence was a substantial factor in causing his injury.**

When the superior court denied Baum's motion for a new trial, it theorized that the jury's verdict could be "based on a . . . finding [that] Baum's negligence in

---

**14** (...continued) accident" because the threshold question for the jury was "whether [the defendant's] negligence — not the accident generally — caused the injuries").

**15** *Hayes v. Xerox Corp.*, 718 P.2d 929, 931 (Alaska 1986).

**16** *Id.*

apparently not looking where he was going [was] so overwhelming that any negligence of Home Depot [was] de minimus [sic]." Baum argues that it would have been improper for the jury to consider his comparative negligence when it determined whether Home Depot's negligence was the cause of Baum's injury. Home Depot responds that Baum alleged three theories of Home Depot's negligence and that the jury could have "decided that Home Depot was negligent in one of these three ways but still found that this was not a substantial factor in causing Mr. Baum's harm."

To prevail in his negligence case against Home Depot, Baum was required to "prove a duty, a breach of that duty, and an injury which was proximately caused by the breach."[17] Alaska follows the substantial factor test of causation.[18] Under this test, juries evaluating a plaintiff's negligence claim must "examine the relationship between the negligence and the harm" and determine whether the defendant's negligence "[can or] cannot be considered a substantial factor in causing [the plaintiff's] harm."[19] This requires the jury to examine the plaintiff's own negligence. Because "negligence law prohibits liability for harm 'too remote from the defendant to be chargeable to him,' "[20] a defendant's negligence "cannot be considered a substantial factor in causing harm if [a jury determines that] the negligence's relation to the harm is 'trivial.' "[21]

---

[17]    *Richey v. Oen*, 824 P.2d 1371, 1374 (Alaska 1992).

[18]    *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007) ("Alaska follows the 'substantial factor test' of causation, which generally requires the plaintiff to show that the accident would not have happened 'but for' the defendant's negligence.").

[19]    *Long v. Arnold*, 386 P.3d 1217, 1221 (Alaska 2016).

[20]    *Id.* (quoting *Howarth v. State, Pub. Def. Agency*, 925 P.2d 1330, 1333 (Alaska 1996)).

[21]    *Id.*

Instruction No. 24 explained negligence and the substantial factor test, specifically directing the jury that Home Depot's "negligence cannot be a remote or trivial factor" in causing Baum's harm. Baum did not object to this instruction, and his own proposed instruction contained identical language. To determine whether Home Depot's negligence was a remote or trivial factor, the jury had to consider Baum's actions. Otherwise the jury would have abdicated its duty "to examine the relationship between the negligence and the harm."[22] Because Baum's argument misunderstands the substantial factor test, we reject his claim that the jury improperly considered his own negligence.[23]

### 3.    There is no evidence that the jury was confused about causation.

We will "affirm a [superior] court's decision to deny a new trial if there is an evidentiary basis for the jury's decision."[24] Because jurors "are entitled to disbelieve a witness or otherwise discount a witness's testimony, . . . credibility determinations made by the jury are generally left undisturbed by this court."[25] We will not reverse a decision to deny a new trial when the party requesting the new trial "fails to account for the jury's role in making credibility determinations"[26] and offers no evidence that the

---

[22]    *Id.*

[23]    Because we agree with the superior court's analysis regarding the jury's consideration of Baum's negligence, we do not need to consider the court's separate post-injury negligence analysis.

[24]    *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001) (quoting *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999)).

[25]    *Richey v. Oen*, 824 P.2d 1371, 1376 (Alaska 1992).

[26]    *Kocurek v. Wagner*, 390 P.3d 1144, 1152 (Alaska 2017).

verdict was based on "sheer speculation."[27]  The "relevant question for us" is "whether there was an evidentiary basis for the jury's [decision] in light of the jury's responsibility to make its own credibility determinations."[28]

Baum's final argument is that the jury may have "mistakenly applied [the] damages causation argument to the negligence causation question."  He claims the jury may have been confused regarding "causation as an element of negligence versus causation as a requirement in proving that damages are related to the subject inquiry."

Baum's argument is conjecture that is unsupported by the record.  He points to statements in Home Depot's closing argument that "[Baum has] to prove the damages . . . [and] . . . what we call causation" and that Baum had not presented evidence that his shoulder's continuing limitations were based on his fall at Home Depot to argue that the jury might have "mistakenly applied [the] damages causation argument to the negligence causation question."

Not only does Baum's argument fail to acknowledge that the jury was instructed that closing arguments are not evidence, it also overlooks the context of Home Depot's counsel's closing argument and the evidence presented at trial.  Home Depot's closing argument directed the jury to first address "liability, who's at fault for this accident."  Home Depot then argued that "issue number two . . . [was] damages" but that the jury did not "need to get there" because there was no "negligence or carelessness on the part of Home Depot."

The jury heard testimony that Baum was looking where he was going when he walked into the pallets and that he was not.  And it heard both his description of the

_____

**27**      *Pugliese*, 988 P.2d at 582 (reversing superior court's decision to deny a new trial because the jury's verdict "would have required sheer speculation").

**28**      *Kocurek*, 390 P.3d at 1153.

number of pallets and their appearance, as well as Home Depot employees' different descriptions. Finally, the jury heard Baum's expert's opinion about Home Depot's negligence, but it also heard that he had not visited Home Depot to determine what Baum saw or had been able to see.

Because Baum offers nothing more than conjecture about the jury's possible confusion and the evidence presented provides a "basis for the jury's [decision] in light of [its] responsibility to make . . . credibility determinations,"[29] we must affirm the superior court's denial of his motion for a new trial.

## V.   CONCLUSION

We AFFIRM the superior court's decision denying Baum's motion for a new trial.

---

[29]    *Id.*