**Sean WINSCHEL, Appellant,**

v.

**Brian R. BROWN, Appellee.**

**No. S–12378.**

Supreme Court of Alaska.

Nov. 9, 2007.

---

Kenneth P. Ringstad, Paskvan & Ringstad, P.C., Fairbanks, for Appellant.

Kim S. Stone, McConahy, Zimmerman & Wallace, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Sean Winschel appeals a summary judgment ruling dismissing his negligence suit against Brian R. Brown. Winschel suffered a head injury while driving his four-wheel ATV when he struck a light pole suspended over a bike path that runs along the Johansen Expressway in Fairbanks. The state-owned light pole had fallen across the path approximately ninety minutes earlier when Brown lost control of his vehicle on the expressway and struck the base of the pole. Winschel sued Brown for negligence, and both parties moved for summary judgment.

The superior court granted summary judgment to Brown, concluding that because the circumstances of Winschel's accident were not foreseeable, Brown owed no duty to Winschel and could not have been the proximate cause of his injury. Because Winschel has presented sufficient evidence to raise issues of material fact regarding duty and causation, we reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

On October 23, 2004, at around 12:30 p.m., Brian R. Brown was driving his GMC Suburban west on the Johansen Expressway in Fairbanks. As he entered a curve about a quarter mile west of College Road, he came upon a two-vehicle accident on the left shoulder. Although the vehicles had been moved from the main portion of the road, flares lit to warn drivers of the collision had slid or rolled down the icy, banked pavement into Brown's lane of travel. As he attempted to shift lanes, Brown lost control of his vehicle, spun around, and struck the base of the state-owned pole, causing it to topple across a nearby chain-link fence.[1] Held up by the fence, the pole extended across a snow-covered bike and pedestrian path that ran parallel to the expressway at that point.

The collision with the light pole dented Brown's bumper, but he was not injured. Fairbanks Police Officer Peyton Merideth, who was already at the scene of the earlier accident, came over to assist Brown. The officer warned Brown that the state Department of Transportation (DOT) might bill him for the cost of repairing the pole and would send a letter regarding any costs.[2] According to Brown, the officer took his identifying information and instructed him to leave the expressway.[3] Brown then returned to his

---

1. The light pole was a "breakaway" pole designed to knock over easily if hit.

2. The Alaska DOT is responsible for maintaining both the light pole in question and the Johansen Expressway in Fairbanks. According to Officer Merideth, the state is responsible for deciding "whether to repair the damage, or when the repair work will occur."

3. Officer Merideth stated in his affidavit that he did not remember telling Brown to leave the scene, or that he might have to pay for the damage to the pole. But he stated that "such advice would not be inconsistent with typical practice and protocol of [the Fairbanks Police Department]."

vehicle and drove away. Officer Merideth wrote in his collision report that he believed Brown "was driving too fast for the road conditions," though he did not cite Brown "due to the confusing road flare pattern in the roadway."

While at the accident scene, Officer Merideth also reported the downed pole to Fairbanks Police Department dispatch, which was responsible for notifying the DOT. He told police dispatch that a "light pole had been knocked over, that there weren't any live wires, and that the pole was not in the roadway." The officer did not notice that the pole was across the bike path, so he did not mention it in his communication to dispatch. The record does not reflect what steps police dispatch took to notify the state DOT.

Approximately ninety minutes later, at around 2 p.m., Sean Winschel left his home off Danby Street to stop by a nearby U–Haul business where he worked. To reach his workplace—which was less than one mile from his home—Winschel decided to drive his Honda four-wheel ATV on the bike path that runs along the expressway between Danby Street and College Road.

Winschel, who was not wearing a helmet, entered the path heading east near the crest of a hill. Approximately seventy yards from this point, the path curved to the left at the bottom of the hill. As he drove down the hill toward the downed pole, Winschel was traveling in third gear at an estimated twenty-five miles per hour. Winschel saw the light pole at the last second. He tried ducking to avoid the pole, but it was too late. Winschel's head struck the pole, fracturing his skull. After being treated at the scene by paramedics, Winschel was taken to Fairbanks Memorial Hospital and later flown to Anchorage for medical care. Shortly after Winschel's accident, a state DOT repair crew arrived at the accident site.

### B. Procedural History

On May 2, 2005, Winschel sued Brown, alleging that his injuries were caused by Brown's negligence in losing control of his Suburban on the expressway and failing to mark or remove the downed pole. Both parties filed motions for summary judgment on the issues of duty and causation. On June 9, 2006, Superior Court Judge Randy M. Olsen ruled in Brown's favor, concluding that "[b]ased on the unique facts of this case, including police oversight of the accident scene and police direction to leave the area after the police had notified DOT," Brown owed no duty to Winschel and was not a proximate cause of the accident. On the issue of proximate cause, the court concluded that Winschel's "own illegal conduct" was a superseding cause. In addition, the court ruled that because of his illegal use of a motorized vehicle on the bike path, Winschel was barred as a matter of public policy from recovering damages. Winschel filed a motion for reconsideration, which the court denied before entering a final judgment in Brown's favor. Winschel appeals the superior court's grant of summary judgment to Brown.

### III. STANDARD OF REVIEW

We independently review orders granting summary judgment by considering the entire record in the light most favorable to the non-moving party to determine whether it reveals any genuine issues of material fact.[4] A party moving for summary judgment must make a prima facie showing that there is no genuine issue of material fact and must demonstrate that the movant is entitled to judgment as a matter of law.[5] To defeat summary judgment, the opposing party may in turn offer admissible evidence reasonably tending to dispute the moving party's evidence, thus establishing that a genuine issue of material fact remains to be tried.[6]

### IV. DISCUSSION

#### A. Duty

Winschel argues that the superior court erred in granting summary judgment to Brown on the issue of duty. He contends

---

4. *Olson v. Teck Cominco Alaska, Inc.,* 144 P.3d 459, 463 (Alaska 2006).

5. *See* Alaska R. Civ. P. 56(c).

6. *See Olson,* 144 P.3d at 463.

that, as a driver on the expressway, Brown owed a duty of reasonable care to users of the adjacent bike path based on general principles of negligence, Alaska traffic regulations, and the public policy factors set forth in *D.S.W. v. Fairbanks North Star Borough School District.*[7]

A fundamental tenet of negligence law is that a defendant owes a duty of due care to "all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous."[8] In the context of determining a duty, this court has taken an expansive view of foreseeability. We have "made it clear that foreseeability is a broad concept and does not require that the precise harm in a given case be predictable."[9]

In addition, our cases have drawn a distinction between questions concerning the existence of a duty and those related to the scope of an existing duty.[10] We have stated that summary judgment is appropriate for the first type of inquiry—that is, where the only reasonable inference from the undisputed facts is that one party owed another no duty at all or owed a duty "clearly and vastly narrower in scope than the one that the other party asserts."[11] Conversely, summary judgment on questions of duty is disfavored where the issue is one of "the precise scope of that duty, or of whether particular conduct did or did not breach it."[12]

In granting Brown's motion for summary judgment on the issue of duty, the superior court reasoned that Winschel's accident was not foreseeable because of Winschel's illegal use of an ATV on the bike path. As the court stated, "it was not foreseeable that in a small window of time, an illegal user of the bike path, proceeding at a speed far in excess of the standard of the intended use, would come upon the downed pole." Along the same line, the court invoked the "general rule that illegal acts will break a chain of causation," suggesting that the rule was particularly apt in this case because it would be "poor public policy" to require an individual who committed an act of negligence to "have to assume and anticipate additional unlawful conduct by third parties."

The superior court also acknowledged that "after creating the hazard," Brown had a duty to take steps to have it removed. But the court concluded that Brown "terminated" this duty through his contact with the Fairbanks police who, in turn, notified the state DOT. As the court saw it, "there is no moral blame to be attached to Brown's conduct after DOT was notified and he was directed to leave the area."

In his original complaint and his opposition to Brown's motion for summary judgment, Winschel argued that Brown had a duty to exercise reasonable care not only after hitting the light pole, but before the collision as well. Winschel further asserted that Brown's duty extended to him because a "reasonably probable and foreseeable consequence of Brown's act of knocking over the light pole . . . is that someone will hit the light pole with their head." Winschel renews these arguments on appeal, adding that the superior court failed to recognize that he raised genuine issues of material fact as to whether Brown breached his duty by driving too fast on the expressway given the road and weather conditions.

We agree with Winschel that summary judgment on the question of duty was inappropriate. As the superior court cor-

**7.** *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981).

**8.** *Div. of Corr. v. Neakok*, 721 P.2d 1121, 1125–26 (Alaska 1986) (citing *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669, 680 (1974)).

**9.** *P.G. & R.G. v. State, Dep't of Health & Human Servs.*, 4 P.3d 326, 332 n. 11 (Alaska 2000).

**10.** *Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 975 (Alaska 2005).

**11.** *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203–04 (Alaska 1998); *see also Neakok*, 721 P.2d at 1127 n. 7 ("While a specific case-by-case determination of foreseeability and causation lies within the province of a jury, the existence of a duty is a question of law.").

**12.** *Arctic Tug*, 956 P.2d at 1203.

rectly recognized, the critical inquiry is whether Winschel's injury was within the scope of foreseeable risks from Brown's conduct. The court's analysis, however, focused only on Brown's actions after he struck the light pole—that is, whether he took any steps to notify or warn others of the hazard. In doing so, the court overlooked Winschel's contention that Brown had an initial duty to use reasonable care in driving on the expressway.[13] Winschel reasonably asserts that this duty required Brown to drive at a speed appropriate for road conditions, maintain control of his vehicle, and keep his vehicle within a single lane of traffic.

In addition to overlooking the first part of Brown's duty, the superior court applied an overly narrow standard in assessing the foreseeability of harm to Winschel. For example, the court emphasized the illegality of Winschel's use of the four-wheeler, declaring it unforeseeable that "in a small window of time, an illegal user of the bike path, proceeding at a speed far in excess of the standard of the intended use, would come upon the downed pole." This approach is contrary to our teaching that foreseeability "does not require that the precise harm in a given case be predictable."[14] Rather, as Dan B. Dobbs states in *The Law of Torts*, the harm need only be "one of the cluster of harms in a generally foreseeable category."[15] To illustrate this concept, Dobbs offers the following illustration:

> [If] a speeding driver crashes into your living room, the fact that a reasonable person would not have specifically recognized a risk of harm to living room furniture will not assist the driver to avoid liability. It is one of the cluster of harms in a generally foreseeable category, and that is enough.[16]

Here, the "generally foreseeable category" of harms from the toppled pole included injuries to users of the bike path because of the path's close proximity to the expressway near the downed pole. Thus, if Brown's negligence led to his collision with the pole, then the duty of care he owed as a driver extended to users of the bike path near the downed pole. That Winschel's unlawful use of the ATV on the path may not have been precisely foreseeable is irrelevant; his use of the path puts him in the same general category as lawful users of the path placed at risk by a speeding or out-of-control driver. In other words, Winschel's violation of the regulation banning motorized use of the bike path does not negate the foreseeability of the harm that occurred.

 Beyond establishing that Brown owed a general duty to users of the bike path, Winschel raised issues of material fact regarding the breach of that duty in opposition to Brown's motion for summary judgment. Specifically, Winschel cited Officer Merideth's deposition testimony that Brown was driving too fast for road conditions, as well as Brown's own admission that he lost control of his vehicle while attempting to switch lanes to avoid a disabled car in the expressway's left lane. These factual issues are enough to establish a cause of action for negligence, precluding summary judgment for Brown on the issues of duty and breach.

Finally, we address the superior court's determination that the involvement of Fairbanks police and the state DOT in responding to Brown's accident "terminated" any duty that Brown might have owed Winschel. As noted above, the superior court appears to have based its decision on the premise that the only duty Brown owed Winschel (and other users of the bike path) was to "take steps to have the hazard removed."

---

**13.** By knocking over the light pole so that it obstructed the bike path, Brown activated a duty of due care that required him to take reasonable steps to protect others from being harmed by the hazard, and this duty applied regardless of whether Brown acted negligently in hitting the pole. *See* RESTATEMENT (SECOND) OF TORTS § 321 (1965) ("If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reason-

able care to prevent the risk from taking effect.").

**14.** *P.G. & R.G.*, 4 P.3d at 332 n. 11.

**15.** DAN B. DOBBS, THE LAW OF TORTS 336 (2001 & Supp.2007).

**16.** *Id.* at 335–36.

As we have explained, this premise is incomplete because it overlooks Brown's duty to use reasonable care in driving on the icy expressway so that he would avoid striking the light pole. Even if Brown did act with reasonable care after the collision, this would not negate the factual issues raised by Winschel as to whether Brown breached the duty he owed as a driver on the expressway.

Likewise, the superior court's reliance on the "general rule that illegal acts will break a chain of causation" fails to support its determination that Brown owed no duty to Winschel. The court's rationale on this point appears to be based on one of two theories: that Winschel's own conduct was a superseding cause of his injury, or that Winschel's use of the ATV placed him outside the scope of generally foreseeable risks and, thus, Brown did not owe him a duty of care. Neither theory alters our conclusion that summary judgment should not have been granted on the question of duty. As we explain in greater detail below, the blameworthiness of Winschel's own conduct should be evaluated by the trier of fact under Alaska's comparative fault regime; his conduct should not constitute a complete bar on recovery. Alternatively, if the court, in referring to Winschel's "illegal acts," meant that his conduct was not foreseeable and thus no duty was owed, we refer again to our well-established rule that foreseeability is to be defined broadly rather than narrowly.[17]

Because we find that Winschel owed Brown a duty of care under general principles of negligence, we reverse the grant of summary judgment on the issue of duty.[18]

### B. Causation

■ Winschel contends that the superior court also erred in granting summary judgment to Brown on the issue of causation. As with the question of duty, he argues that because he raised issues of material fact, the question of causation should be left to the trier of fact.

■ Alaska follows the "substantial factor test" of causation, which generally requires the plaintiff to show that the accident would not have happened "but for" the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it.[19] We have previously recognized that determinations of proximate cause usually involve questions of fact within the province of the jury;[20] proximate cause becomes a matter of law only where reasonable minds cannot differ.[21]

■ We have also recognized that a superseding cause can relieve the defendant of liability even if the defendant committed a negligent act that proximately caused an injury.[22] To determine whether conduct amounts to a superseding cause, we rely on the approach set out in the Restatement (Second) of Torts.[23] But we have emphasized that, under the Restatement's approach, "an action of a third person which intervenes to injure the plaintiff will shield a negligent defendant only where after the event and looking back from the harm to the actor's negligent conduct, it appears ... *highly extraordinary* that it should have brought about the harm."[24]

17. See *P.G. & R.G.*, 4 P.3d at 334 ("[F]oreseeability does not imply an ability to predict precise actions or injuries: 'When the risk created causes damage in fact, insistence that the precise details of the intervening cause be foreseeable would subvert the purpose of that rule of law.'" (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43, at 280–81 (5th ed.1984))).

18. Our ruling makes it unnecessary to reach Winschel's argument that the public policy factors in *D.S.W. v. Fairbanks North Star Borough School District* support imposing a duty on Brown.

19. *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993).

20. *P.G. & R.G.*, 4 P.3d at 334; *Turnbull v. La-Rose*, 702 P.2d 1331, 1336 (Alaska 1985).

21. *P.G. & R.G.*, 4 P.3d at 334.

22. See *Sharp v. Fairbanks N. Star Borough*, 569 P.2d 178, 182 (Alaska 1977).

23. Restatement (Second) of Torts § 435.

24. *Griffith v. Taylor*, 12 P.3d 1163, 1168 (Alaska 2000) (emphasis and alteration in original) (quoting *Williford v. L.J. Carr Invs., Inc.*, 783 P.2d 235,

Here, the "but for" element of causation is not in dispute. Winschel's accident would not have occurred if Brown had not lost control of his vehicle and struck the light pole. Rather, the questions of causation disputed here are whether Brown's actions were a substantial factor in causing Winschel's injuries and whether Winschel's own conduct amounted to a superseding cause that broke the causal link to Brown.

In granting summary judgment to Brown, the superior court concluded that Winschel's own conduct—driving the four-wheeler on the bike path at an estimated speed of twenty-five miles per hour—was an unforeseeable, superseding cause that broke the chain of causation and relieved Brown of any liability. While the court ruled that "[t]he proximate cause of Winschel's accident was his own illegal conduct," the court also suggested, as indicated above, that the intervention of Fairbanks police "firmly severed" any causal link between Brown's conduct and Winschel's injury.

We disagree. Based on the evidence presented by Winschel, we conclude that the issue of proximate cause should have been left to the jury. Specifically, Winschel raised issues of material fact as to whether Brown was traveling at an appropriate speed for road conditions and whether the pole was visible against overcast skies. Because of this, when the evidence is viewed in the light most favorable to Winschel, reasonable individuals could regard Brown's conduct as a cause of Winschel's injury and attach responsibility to it.

Moreover, Winschel's own conduct did not rise to the level of a superseding cause; nor do we believe that Winschel's actions should, as a matter of law, be regarded as the sole proximate cause of his injuries. As with the question of duty, proximate cause requires only that the general kind of harm be foreseeable for an actor's conduct to be considered the proximate cause of the plaintiff's injuries.[25] Here, given the closeness of Brown's conduct, both in time and location, and the proximity of the expressway to the bike path, reasonable persons could attach liability for Winschel's injury to Brown's actions and could also find that it was not "highly extraordinary" that those actions brought about the harm.[26]

Similarly, we reject the finding that the involvement of Fairbanks police and the state DOT severed any causal connection between Brown's actions and Winschel's injury. Nor can the agencies' actions be considered a superseding cause. Simply put, their actions did not make it "highly extraordinary" that Brown's alleged negligence in losing control of his car and striking the light pole could lead to an injury on the bike path. This conclusion is supported by the Restatement factors: the intervention of the agencies did not bring about a harm different in kind from what would otherwise have resulted from Brown's alleged negligence; nor did their involvement "operat[e] independently of any situation created by the actor's [alleged] negligence."[27]

For these reasons, we reverse the rulings on proximate cause and superseding causation.

## C. Illegality of Winschel's Conduct

The superior court also ruled that Winschel was barred from recovering dam-

---

237 (Alaska 1989)); *see* RESTATEMENT (SECOND) OF TORTS § 435 cmt. c.

The Restatement also lists specific considerations for determining whether an intervening force amounts to a superseding cause. These considerations include (1) whether the intervention "brings about harm different in kind from that which would otherwise have resulted from the actor's negligence"; (2) whether the intervening force is "operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation"; (3) whether "the operation of the intervening force is due to a third person's

act or to his failure to act"; (4) whether the intervening force is "due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him"; and (5) "the degree of culpability of a wrongful act of a third person which sets the intervening force in motion." RESTATEMENT (SECOND) OF TORTS § 442.

**25.** DOBBS, *supra* note 15, at 466.

**26.** *Griffith*, 12 P.3d at 1168.

**27.** *See* RESTATEMENT (SECOND) OF TORTS § 442.

ages because at the time of his injury he was violating a state regulation that bans motorized traffic on bike paths.[28] Although the court believed that Winschel's illegal use of the bike path affected the issue of duty by making his injuries unforeseeable, it also viewed the violation as a superseding cause, referring to "[t]he general rule that illegal acts will break a chain of causation." In addition, the court seemed to view Winschel's violation as precluding him from recovering damages as a matter of public policy under the principle that "parties are not generally allowed to recover as a result of their own wrongdoing." The court recognized that the legislature had codified this policy in AS 09.65.210, which applies only to plaintiffs injured while committing felonies or driving under the influence of alcohol or controlled substances[29]—offenses that have no application here. But the court also noted that, in *Ardinger v. Hummell,*[30] we had indicated a willingness to extend the same underlying principle to crimes other than those listed in AS 09.65.210. Relying on *Ardinger,* the court reasoned that the policy against allowing parties to recover as a result of their own wrongdoing barred Winschel's claim because his injury was precisely the type of harm that the regulation he violated sought to prevent. Winschel challenges this ruling, insisting that under Alaska law, comparative fault does not bar recovery. We agree.[31]

The superior court relied on a mistaken view of our ruling in *Ardinger.* There, we began by describing the "well[-]established" rule that " 'one who violates a criminal stat-ute is not deprived of all protection against the torts of others.' "[32] We then recognized a public policy exception to this rule: "[I]f the injured person has violated a statute designed to prevent a certain type of risk, he is barred from recovery for harm caused by violation of the statute if, but only if, the harm resulted from a risk of the type against which the statute was intended to give protection." [33]

Yet we went on to emphasize that this public policy exception is narrow:

[I]n those cases in which recovery is barred on public policy grounds, the result mirrors the outcome of the abandoned contributory negligence rule: Responsibility is not necessarily allocated in proportion to fault, and one party is exempted from liability altogether. It is therefore only with considerable prudence that we invoke the public policy bar against recovery. Accordingly, we have applied the public policy rationale for barring recovery only in cases involving serious criminal conduct that intentionally threatened the safety of others, such as homicide, rape, and arson.[34]

*Ardinger* involved an unlicensed and underage driver who was killed in a single-vehicle collision that occurred when he drove a car without the owner's knowledge or permission, in violation of Alaska's joyriding statute; the boy's mother brought a wrongful death action against a fourteen-year-old friend of the driver who had let the driver use her mother's car.[35] In these circumstances, we declined to apply the public poli-

---

28. *See* 13 Alaska Administrative Code (AAC) 02.455(g) ("No snowmobile or other off-highway vehicle may cross or travel on a sidewalk, a location intended for pedestrian or other nonmotorized traffic, an alley, or a vehicular way or area which is not open to snowmobile or off-highway vehicle operation. . . .").

29. AS 09.65.210 provides in relevant part that a "person who suffers personal injury or death . . . may not recovery damages . . . if the injury or death occurred while the person was . . . engaged in the commission of a felony . . . [or] operating a vehicle, aircraft, or watercraft while under the influence of intoxicating liquor or any controlled substance."

30. *Ardinger v. Hummell,* 982 P.2d 727 (Alaska 1999).

31. *See Smith v. Ingersoll–Rand Co.,* 14 P.3d 990, 992–93 (Alaska 2000) (recognizing that, under AS 09.17.060, Alaska relies on a system of comparative fault similar to the doctrine of comparative negligence).

32. *Ardinger,* 982 P.2d at 735 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 36, at 232 (5th ed.1984)).

33. *Id.* (alteration in original) (quoting Restatement (Second) of Torts § 889 cmt. b).

34. *Id.* at 736 (citations omitted).

35. *Id.* at 729–30.

cy exception to bar the wrongful death claim, holding both that the "violation does not represent the level of serious criminal conduct generally necessary to bar recovery" and that

> the harm . . . did not clearly result "from a risk of the type against which [the joyriding statute] was intended to give protection." That statutory provision . . . was designed to prevent theft and the consequent harm to property. The harm in this case was not directly caused by the act of theft. The causal nexus between [the driver's] violation of the statute and his death is therefore tenuous.[36]

Here, as in *Ardinger*, Alaska's statute adopting the public policy exception—AS 09.65.210—does not bar Winschel's recovery because his violation of the bike-path regulation is not covered by the statute. Nor can the policy-based exception described in *Ardinger* apply. The regulation at issue here, which prohibits driving a motorized vehicle on a bike path, does not prohibit the kind of "serious criminal conduct" described by *Ardinger* as a prerequisite for the exception—"conduct that intentionally threatened the safety of others, such as homicide, rape, and arson."[37]

Neither does the harm at issue in this case "clearly result 'from a risk of the type against which [the bike-path regulation] was intended to give protection.'"[38] The regulation prohibiting motorized use of bike paths is primarily designed to protect non-motorized bike-path users from harm, not to protect motorized users from hurting themselves. Moreover, under Winschel's version of the incident—which we must accept as true in reviewing the challenged summary judgment ruling—the circumstances that led to the injury do not seem uniquely attributable to his use of a motorized vehicle. As Winschel described it, the accident occurred without warning or opportunity to stop as he was rounding a blind curve at the bottom of a hill. Winschel was driving an ATV that had five gears; he was in third gear, was not speeding, and had just entered the bike path, which ATVs frequently used during the winter. Under these circumstances the risk arising from Winschel's use of the ATV seems roughly comparable to the risk that a bicyclist, skateboarder, or wintertime skier might face on the same path. As in *Ardinger*, the nexus between the violation and the harm at issue "is therefore tenuous."[39]

For these reasons, we conclude that Winschel's violation of the bike-path regulation does not bar his claim.[40] Although Winschel's violation may well have significant weight in assessing Winschel's proportionate share of the fault under Alaska's comparative

---

36. *Id.* at 736–37 (quoting Restatement (Second) of Torts § 889 cmt. b).

37. *Id.* at 736.

38. *Id.* (quoting Restatement (Second) of Torts § 889 cmt. b).

39. *Id.* at 737.

40. Although Brown claims that Winschel waived this point by failing to include it in his points on appeal or argue it in his opening brief, we find no merit to this claim. Winschel's points on appeal asserted general challenges to the trial court's summary judgment order and its order denying reconsideration, thus giving Brown sufficient notice that all aspects of the court's ruling were at issue. *See, e.g., Native Vill. of Eklutna v. Bd. of Adjustment,* 995 P.2d 641, 646 (Alaska 2000). The superior court's ruling on summary judgment discussed the exception barring claims based on illegal conduct as an issue affecting both duty and proximate causation; Winschel's opening brief generally addressed both issues, seeking to establish that he had raised triable issues of fact sufficient to avoid summary judgment. After Brown's brief then focused on Winschel's violation as an independent bar to recovery, Winschel replied to Brown's argument. In denying Brown's claim of waiver, Winschel insists that since his briefing established a prima facie case precluding summary judgment, Brown had the burden of asserting his theory of superseding causation, thus making it appropriate for Winschel to reply after Brown argued the point. Although it certainly would have been better practice for Winschel to raise these arguments in his opening brief, his explanation for failing to raise them earlier is not wholly implausible. More important, when Winschel later did argue the point in his reply, his arguments did not depend on new facts, were closely related to other arguments at trial and in his opening brief, and could have been gleaned from the pleadings; under these circumstances, we decline to view the issue as having been waived. *See, e.g., State Farm Auto. Ins. Co. v. Raymer,* 977 P.2d 706, 711 (Alaska 1999).

negligence regime,[41] it does not, as a matter of law, disqualify Winschel from asserting his claim.[42]

## V. CONCLUSION

For these reasons, we REVERSE the decision granting summary judgment to Brown and REMAND for further proceedings.

---

41. *See* AS 09.17.060 (codifying comparative negligence).

42. As Dobbs confirms in his treatise, the "fact that the plaintiff is guilty of contributory negligence per se in violating a statute shows negligence but it does not show how much, so a comparison of the plaintiff's per se fault and the defendant's negligence is still appropriate." DOBBS, *supra* note 15, at 526 n. 18.