NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| NATHAN L. ADAMS, | Court of Appeals No. A-11112 |
| Appellant, | Trial Court No. 3PA-11-1723 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2478 — October 2, 2015 |

Appeal from the Superior Court, Third Judicial District, Palmer, Vanessa H. White, Judge.

Appearances: John P. Cashion, Cashion Gilmore LLC, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A jury convicted Nathan L. Adams of felony driving under the influence of clonazepam, a controlled substance.[1]

Adams appeals his conviction, arguing that the trial court instructed the jury in a manner that allowed it to convict him of driving under the influence even if his impaired driving was due to his physical exhaustion rather than his ingestion of clonazepam. We conclude that the court's instructions adequately conveyed to the jury that it could not convict Adams unless (1) he was impaired to the extent that he could not operate a motor vehicle with the caution characteristic of a person of ordinary prudence and (2) this impairment was proximately caused by his ingestion of clonazepam.

Adams also argues that the superior court erred when it refused to exclude the testimony of the State's expert witness after the State failed to provide timely notice of the expert's testimony. Because Adams rejected the trial court's offer of a continuance, and because he has not shown that the offered continuance was insufficient to cure any prejudice caused by the State's late notice of its expert witness, we affirm the trial court's ruling as within its discretion.

Lastly, Adams argues that the State's evidence was insufficient to support his conviction for driving under the influence. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there was legally sufficient evidence to support the jury's verdict.

Accordingly, we affirm the judgment of the superior court.

---

[1] AS 28.35.030(a)(1), (n). Adams was also convicted of sixth-degree misconduct involving a controlled substance under AS 11.71.060(a) but he does not challenge that conviction on appeal.

*Facts and proceedings*

On July 1, 2011, three individuals called 911 to report Adams's erratic and dangerous driving. They each reported seeing Adams's car swerving across the road, running multiple people into the ditch, and almost hitting a family van and a truck.

Alaska State Trooper Jesse Lopez responded to these reports and observed Adams's car cross the fog line and drift back across the median of the Parks Highway. The car then entered a ditch, struck a culvert, entered a second road, and almost hit a garbage truck.

When Trooper Lopez contacted the driver, Nathan Adams, he was struggling to put the vehicle into park. Adams displayed other signs of impairment: he was sluggish, his speech was slurred, and he staggered when he walked. Adams told Lopez that he only had six hours of sleep and that he was tired.

Adams performed poorly on field sobriety tests, but when he submitted to a breath test, the test showed that he had not consumed any alcohol.

Adams told the troopers that he had a doctor's prescription for clonazepam,[2] and the troopers recovered two empty bottles of clonazepam in the center console of his vehicle. Also located in the console was a marijuana pipe and a small amount of marijuana (5.82 grams).

Approximately seven hours after Adams was arrested, the troopers obtained a blood sample from him. The initial test of that blood sample revealed no controlled substances. But a second test shortly before trial revealed .03 milligrams of clonazepam per liter of Adams's blood. At trial, the State's expert testified, without contradiction,

---

[2] Clonazepam (brand name Klonopin) is a Schedule IV controlled substance in the benzodiazepine family. It typically has a 30- to 40-hour half-life and is commonly prescribed to treat panic disorders and epileptic conditions. *See* U.S. Food and Drug Administration, Prescribing Information for Klonopin, available at [http://www.accessdata.fda.gov/drugsatfda_docs/label/2009/017533s045,020813s005lbl.pdf] (last visited Sep. 24, 2015).

that this amount of clonazepam was sufficient to impair a driver's balance, cognition, and reaction time, and that Adams likely had more clonazepam in his system at the time he was driving.

Because Adams had previous convictions for driving under the influence, the State charged him with a felony offense.[3] He was also charged with sixth-degree misconduct involving a controlled substance based on the marijuana found in his car.[4] Adams remained incarcerated pending his trial because he was unable to meet his bail conditions.

The day before trial, the State gave the defense notice that it intended to present the testimony of the expert who had analyzed Adams's blood sample for the presence of controlled substances. Adams's attorney objected to the testimony, pointing out that Alaska Rule 16 required the State to provide notice of expert testimony at least forty-five days before trial.[5] The defense attorney asked the court to either exclude the testimony or grant a forty-five-day continuance with the time counted against the State for purposes of Criminal Rule 45, which would result in dismissal of the case for violation of Adams's right to a speedy trial.

Superior Court Judge Vanessa White refused to exclude the expert testimony or dismiss Adams's case, ruling that a continuance was the appropriate remedy for the State's late notice. The judge gave Adams two options: a continuance of a few weeks to allow him to prepare his defense to the State's late-noticed expert, or the full forty-five-day continuance he requested provided that he waived his right to a trial within the 120-day period required by Criminal Rule 45.

---

[3]   AS 28.35.030(a)(1), (n).

[4]   AS 11.71.060(a).

[5]   *See* Alaska R. Crim. P. 16(b)(1)(B).

Adams's attorney rejected both of these options as inadequate. Because Adams refused any continuance that would not result in dismissal of his case under Rule 45, his trial began that day.

At trial, Adams argued that the jury should acquit him because his erratic driving was caused by his exhaustion, not by his ingestion of clonazepam. The jury ultimately rejected that defense and convicted Adams of felony driving under the influence and sixth-degree misconduct involving a controlled substance.

This appeal followed.

*Why we conclude that the trial court's instructions to the jury regarding the cause of Adams's impairment were legally adequate in this case*

Adams's jury was instructed that to convict Adams of driving under the influence, the State had to prove beyond a reasonable doubt that Adams drove while "under the influence of [an] alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination."[6]

The jury was also given the following instruction, defining "under the influence":

> A person is under the influence when as a result of the use thereof, his or her physical or mental abilities are impaired so that he or she no longer has the ability to operate or drive a motor vehicle with the caution characteristic of a person of ordinary prudence who is not under the influence of such a substance.[7]

---

[6] AS 28.35.030(a)(1).

[7] *See Molina v. State*, 186 P.3d 28, 29 (Alaska App. 2008); *Gunderson v. Anchorage*, 762 P.2d 104, 114 n.7 (Alaska App. 1988).

(Although no one noticed the omission in this instruction when it was first submitted to the jury, on appeal the parties agree that the instruction should have read: "A person is under the influence *of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination,* when as a result of the use thereof ..." or alternatively, "[a] person is under the influence *of clonazepam, a controlled substance,* when as a result of the use thereof ..."[8])

During deliberations the jury asked the court for clarification of these instructions. First, the jury asked the court to explain whether the phrase "singly or in combination" meant "in combination [with] anything (exhaustion), or just those on this list?" The parties agree that the court responded appropriately to this question by instructing the jury that "singly or in combination" referred only to an alcoholic beverage, intoxicating liquor, inhalant or controlled substance, not "to other possible conditions, such as sleepiness or exhaustion."

Second, the jury asked for clarification of the instruction defining "under the influence" (Instruction No. 15). The court's response to that question is the subject of this appeal.

Specifically, the jury sought clarification on what it meant for a driver to be impaired "as a result of" his or her use of a controlled substance:

> In instruction 15, does "as a result of" mean the controlled substance must be the <u>sole</u> cause? Or are other factors (exhaustion) allowed? In short: can we convict based on shared cause of guilt?

After consulting with the parties, the court provided the following response to the jury's question:

> In Instruction #15, the phrase "as a result of" means as a direct result of the use of an alcoholic beverage, intoxicating

---

[8]   *Cf.* Alaska Criminal Pattern Jury Instruction 28.35.030(a) #4 (2011).

liquor, inhalant or any controlled substance. The controlled substance need not be the only cause of the driver's impaired performance, but, for purposes of evaluating whether the defendant was driving under the influence, the use of the substance must be one direct cause of the driver's inability "to operate or drive a motor vehicle with the caution characteristic of a person of ordinary prudence."

Adams agreed with the first part of the court's instruction — that "as a result of" meant "as a direct result of." But he objected to the rest of the instruction. The court overruled his objection.

On appeal, Adams argues that the court's clarifying instruction was error. He asserts that the court should have specifically instructed the jury that it "could not incorporate Adams's exhaustion into the equation" in deciding whether to convict him of driving under the influence.

The parties agree that, under Alaska law, a person's conduct is the proximate cause of a result only if (1) the result would not have occurred "but for" the conduct and (2) the conduct was "so important" in bringing about the result "that reasonable individuals would regard it as a cause and attach responsibility to it."[9] This test is sometimes referred to as the "substantial factor test."[10]

Thus, the State bore the burden of proving, *inter alia*, that but for Adams's ingestion of clonazepam, he would have been able to drive "with the caution

---

[9] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007); *see generally* Wayne R. LaFave, *Substantive Criminal Law* § 6.4(a), at 466 (2d ed. 2003) (discussing proximate causation in criminal cases).

[10] *Winschel*, 171 P.3d at 148; *see also* Wayne R. LaFave, *Substantive Criminal Law* § 6.4(b) at 468-69 (noting that courts will use the term "substantial factor" rather than "but for" when there are multiple forces operating to cause the harmful result, and each force by itself is sufficient to cause the result).

characteristic of a person of ordinary prudence who is not under the influence";[11] but the State was *not* required to prove that Adams's alleged lack of sleep played no role in his impairment. Similarly, the jury could properly convict Adams of being under the influence of clonazepam even if it found that his lack of sleep contributed in some manner to his impairment.

We think that, taken as a whole, the trial court's instructions adequately conveyed this law to the jury. The jury was told that it could not convict Adams unless the State proved beyond a reasonable doubt that Adams drove while "under the influence of alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination" and that "singly or in combination" did not encompass "other possible conditions, such as sleepiness or exhaustion." The jury was also instructed that Adams's ingestion of clonazepam had to be a "direct cause" of his legal impairment — though it did not have to be the sole cause of his impaired performance.

On appeal, Adams contends that the instruction was not as clear as it could have been and that it may have led the jury to erroneously convict him of being "under the influence" of exhaustion, rather than "under the influence" of a controlled substance. But, in the proceedings below, Adams's attorney failed to offer the trial judge any alternative language that might have better clarified the legal standard. Instead, the defense attorney insisted that the clonazepam had to be the sole cause of Adams's impairment and the trial court had to remove any and all language from the instruction suggesting otherwise. But, as we just explained, that is not the law.

Moreover, if we adopted Adams's contention — that AS 28.35.030(a) requires the State to prove that a defendant's impairment is attributable *solely* to the ingestion of alcoholic beverages or controlled substances — this would create a defense inconsistent with the underlying purpose of the statute. Under Adams's interpretation

---

[11]   *Molina*, 186 P.3d at 29.

of the law, defendants who consumed alcoholic beverages and/or controlled substances to the point where they were impaired would nevertheless be entitled to an acquittal on the DUI charge if they could convince the jury of a reasonable possibility that their impairment was augmented by fatigue or some other extraneous cause.

For these reasons, we conclude that the court's instruction was not error.

*Why we conclude that the trial court did not abuse its discretion by allowing the State's expert witness to testify despite the State's late notice of the expert*

Adams next argues that the superior court erred by allowing the State's expert to testify as an expert witness without timely notice under Criminal Rule 16(b)(1)(B). He contends that, as an incarcerated, pretrial defendant, he was unfairly forced to choose between foregoing his right to a speedy trial and having adequate, timely notice of the expert witness.

Criminal Rule 16(b)(1)(B) provides that "[u]nless a different date is set by the court, as soon as known and no later than 45 days prior to trial, the prosecutor shall inform the defendant of the ... expert witnesses ... the prosecutor is likely to call at trial."[12] The rule also describes the remedy for violations of the disclosure requirements:

> Failure to provide timely disclosure under this rule shall entitle the defendant to a continuance. If the court finds that a continuance is not an adequate remedy under the circumstances of the case, the court may impose other sanctions, including prohibiting the prosecutor from calling the expert at trial or declaring a mistrial.[13]

---

[12] Alaska R. Crim. P. 16(b)(1)(B).

[13] *Id.*

Thus, in the absence of bad faith, a continuance is normally the appropriate remedy for a discovery violation.[14]  But if a continuance is shown to be an inadequate remedy, the trial court may consider other remedies, including exclusion of evidence or a mistrial.[15]

Here, when the State notified Adams of its expert witness, approximately thirty-three days of speedy trial time remained.  The court offered to continue trial to allow Adams the opportunity to prepare for the testimony of the State's expert and to give him a date-certain trial within his current Rule 45 calculation.  The court also offered to continue the case for the full forty-five days provided for under Criminal Rule 16, if Adams consented to a trial outside the current Rule 45 calculation.

Adams rejected both of these options, insisting that the only adequate remedy was to either exclude the expert testimony or dismiss his case for violation of his speedy trial rights under Rule 45.  On appeal, Adams abandons his claim that the case should have been dismissed under Rule 45 and argues only that the offered continuance within the current Rule 45 calculation was inadequate and that the appropriate remedy was exclusion of the expert at trial.

But Adams does not explain why the offered continuance was "inadequate." And his refusal to take *any* additional time to prepare for the State's expert directly undermines his claim that the offered continuance was inadequate.

Adams contends that "the degree to which the prosecution disregarded its obligation to engage in timely discovery and submit timely filings is staggering" and that exclusion was therefore the appropriate remedy in this circumstance, particularly given his continued pretrial incarceration.

---

[14]  *Bostic v. State*, 805 P.2d 344, 348 (Alaska 1991); *Johnson v. State*, 577 P.2d 230, 233 (Alaska 1978).

[15]  *Bostic*, 805 P.2d at 348.

But the record shows that the trial judge was concerned about the prosecutor's actions and their effect on an incarcerated pretrial defendant. The judge held an inquiry into why expert notice was so late and found that it was based on inadvertence, not bad faith. She also found that, contrary to the defense attorney's claims, the proposed expert testimony should not have come as a surprise to the defense because the prosecutor had sent the results of the second blood test to the defense a week earlier. Lastly, the court found that the prosecutor had acted diligently in sending the defense the results of the second blood test as soon as he received them.

Given this record, we conclude that the trial court acted within its discretion when it denied Adams's request for exclusion of the State's expert testimony.

*The State presented sufficient evidence that Adams was under the influence of clonazepam*

Lastly, Adams argues that the State presented insufficient evidence that his impairment was directly caused by his ingestion of clonazepam.

In reviewing a motion for a judgment of acquittal, we view the evidence in the light most favorable to upholding the verdict.[16] Evidence is sufficient to support a conviction if a "fair-minded juror exercising reasonable judgment could conclude that the State had met its burden of proving [the defendant's] guilt beyond a reasonable doubt."[17]

Here, the evidence at trial established that Adams's driving was extremely erratic and dangerous. The trooper who contacted Adams observed many signs of impairment: he was sluggish, his speech was slurred, he staggered when he walked, and

---

[16] *Moore v. State*, 262 P.3d 217, 220 (Alaska App. 2011).

[17] *Hinson v. State*, 199 P.3d 1166, 1170 (Alaska App. 2008) (quoting *Dailey v. State*, 65 P.3d 891, 898 (Alaska App. 2003)) (alteration in *Hinson*).

2478

he performed poorly on field sobriety tests. The evidence also established that Adams had been consuming 2 milligrams of clonazepam twice a day, and that he had .03 milligrams of clonazepam per liter in his blood seven hours after he was arrested. The State's expert testified that clonazepam is a central nervous system depressant that, like alcohol, can impede a person's balance, coordination, thought process, reaction times, and vision. When asked if .03 milligrams of clonazepam per liter in a person's blood was enough to cause these impairments, the expert testified that it was.

Viewing this evidence in the light most favorable to upholding the verdict, we conclude that fair-minded jurors could reasonably find that Adams was driving while under the influence of clonazepam. We therefore conclude that the evidence was sufficient to support Adam's DUI conviction.

*Conclusion*

We AFFIRM the judgment of the superior court.

2478